IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY W. G., SR.

        Plaintiff,

  v.                                     Civil Action No.
                                          5:20-CV-0025 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| OLINSKY LAW GROUP<br>250 South Clinton Street, Suite 210<br>Syracuse, NY 13202 | ANDREW FLEMMING, ESQ. |
| FOR DEFENDANT | |
| HON. ANTOINETTE L. BACON<br>Acting United States Attorney<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | RAMI VANEGAS, ESQ.<br>Special Assistant U.S. Attorney |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on February 18, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated:   February 24, 2021
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JEFFREY W. G., SR.,

                          Plaintiff,

vs.                                             5:20-CV-25


Commissioner of Social Security,

                          Defendant.

------------------------------------------------------------x
```

Transcript of *DECISION*

held on February 18, 2021

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding


<u>APPEARANCES</u>  (by telephone)

For Plaintiff:    OLINSKY LAW GROUP
                  250 South Clinton Street
                  Syracuse, NY 13202
                    BY:  ANDREW AUSTIN FLEMMING, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  15 New Sudbury Street
                  Boston, MA 02203
                    BY:  RAMI VANEGAS, ESQ.



*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

THE COURT: Let me begin by thanking both counsel for excellent presentations. I've enjoyed working with you.

Plaintiff has commenced this proceeding pursuant to 42, United States Code, Sections 405(g) and 1383(c)(3) to challenge a finding by the Commissioner of Social Security that plaintiff was not disabled at the relevant times and, therefore, ineligible for the benefits for which he applied.

The background is as follows. Plaintiff was born in September of 1959. He is currently 61 years old. Plaintiff was 59 years of age at the time of his application for benefits on September 5, 2018. Plaintiff stands 5-foot 3-inches in height and at various times has weighed between 103 and 125 pounds. It was noted at one point in the record that he underwent a significant weight loss at some point.

Plaintiff lives in Cortland County in an apartment with his dog. He was homeless, apparently, at one point in time. He has a dog who he has had for five years and he claims is a self-trained service dog, although there is no official status in that regard.

Plaintiff has three grown children. He is right-handed. Plaintiff has a driver's license but no vehicle. Plaintiff has a 12th grade education and was in regular classes while in school. He also underwent BOCES training for machine trades.

Plaintiff stopped working in April of 2017. At

various times he has worked as a gatekeeper, which involved inventory and orders. He left that position in August of 2007 after a Workers' Compensation injury to his right knee. He has also worked in furniture repair, as a saw operator, as a press helper, in solar energy equipment, and in landscaping. Plaintiff has worked since his alleged -- or he did work, I'm sorry, after in 2016-2017 in lawn equipment repair, but only earned modest amounts of money.

Physically, plaintiff suffers from the residuals of a 1998 left shoulder surgery. He claims occasional pain but is not undergoing any current treatment for that impairment. He also has arthritis in his right knee stemming from the August 2007 injury. He states that the pain comes and goes, and once again is undergoing no current specialized treatment for that impairment. Plaintiff does use a cane but it is apparently not deemed necessary, according to page 412 of the Administrative Transcript.

Mentally, plaintiff suffers from major depressive disorder and generalized anxiety disorder. There is indication that he was sexually abused as a child. He reported two suicide attempts in the 1990s. That's at page 449 of the Administrative Transcript. He went to or presented at an emergency room on January 23, 2019, with suicidal statements.

Plaintiff's primary appears to be Physician

Assistant Susan Jewett since January of 2018. She is with the Cortland Regional Medical Practice. He has also seen Nurse Practitioner Belinda Hollenbeck, Dr. Helen MacGregor, LMSW Deidre Plumley, and those all practice with Cortland County Mental Health Clinic. He has also undergone counseling from LCSW Janet Rider with Copeland Ave. Counseling, and has seen Dr. Keith Harden, and LMHC Joseph Stein, and LMHC Jennifer Talarico with Family Counseling Services. He was discharged in November of 2018 and apparently transferred over at that point or transitioned to Cortland County Mental Health Clinic.

The plaintiff is not currently taking any prescription medication for any of his conditions. In the past he has been on some prescription medication, including Fluoxetine and Prazosin.

In terms of activities of daily living, plaintiff does not cook. He does dress, bathe, groom, drive, do laundry, socialize with his brother and sister-in-law. The evidence is equivocal as to whether he is capable of taking public transportation. He enjoys music, walking his dog, and watching television. Plaintiff smokes more than ten cigarettes per day and has for thirty years. He also consumes alcohol and marijuana.

Procedurally, plaintiff applied for Title XVI benefits on September 5, 2018, alleging an onset date of October 16,

2016, and claiming disability based on arthritis in his right knee, left shoulder injury, and depression.

A hearing was conducted on July 2, 2019, by Bruce S. Fein to address plaintiff's application for benefits. During that hearing ALJ Fein denied a request by plaintiff to reopen prior Title II proceedings. On July 25, 2019, ALJ Fein issued an adverse determination which became a final determination of the Commissioner on November 7, 2019, when the Social Security Administration Appeals Council denied plaintiff's request for review. On January 8, 2020, this action was commenced; it is timely and the Commissioner does not argue otherwise.

In his decision ALJ Fein applied the familiar five-step sequential test for determining disability.

At step one he concluded that plaintiff had not engaged in substantial gainful activity since September 5, 2018.

Proceeding to step two, ALJ Fein concluded that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform work functions, including post left shoulder rotator cuff repair surgery, major depressive disorder, and generalized anxiety disorder. In making that finding, he rejected plaintiff's visual impairment as severe, as well as his nicotine dependence, his right knee pain, and an alleged hearing loss in his left ear.

Proceeding to step three, ALJ Fein concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically addressing listings 1.02, 1.03, 12.04, and 12.06.

ALJ Fein then found based on the entire record that plaintiff is capable of performing medium work as defined in the controlling regulations; except physically, the claimant can occasionally crouch, balance, stoop, climb, kneel and crawl; mentally, the claimant can work in a low stress job defined as requiring only occasional decision-making, occasional changes in work setting, and occasional use of judgment being required; the claimant should not work at jobs requiring production rate or pace work; and the claimant can occasionally interact with co-workers, supervisors, and the public.

Applying that residual functional capacity finding, at step four the Administrative Law Judge concluded that plaintiff is capable of performing past relevant work in the area of furniture repairer and as a gatekeeper, and therefore found no need to proceed to step five of the sequential analysis.

As you know, the Court's task is limited; it applies an extremely deferential standard. The Court must determine whether correct legal principles have been applied and

whether the resulting determination is supported by substantial evidence.

As the Second Circuit Court of Appeals has noted in *Brault versus Social Security Administration Commissioner*, 683 F.3d 443 from 2012, this is an extremely deferential standard. Substantial evidence, of course, is well-defined as such relevant evidence as a reasonable mind would accept as supporting a finding or conclusion. The Second Circuit noted in *Brault* significantly that under the substantial evidence standard, once an ALJ finds a fact, that fact can be rejected only if a reasonable fact-finder would have to conclude otherwise.

In this case plaintiff raises two contentions, essentially. One, he challenges the weight provided to medical opinion evidence, and focuses on the opinions of Dr. MacGregor and the portion of Dr. Shapiro's opinion that was in his view not accepted, that being the moderate limitation in sustaining an ordinary routine and regular attendance at work. And physically, relatedly, the plaintiff challenges the finding that plaintiff is capable of performing medium work despite there being no medical evidence that includes such an opinion. The plaintiff also challenges the rejection of plaintiff's subjective complaints.

Turning first to the medical opinion evidence, this is

interesting because it's one of the early cases that are subject to the new regulations since plaintiff's claim was filed after March 27, 2017; the new regulations, and specifically 20 CFR Section 416.913. I'm using the 416 series because this is an SSI application. The 404 series have parallel regulations. But Section 416.913 provides a definition of medical opinion as being, "A statement from a medical source about what you can still do despite your impairments and whether you have one or more impairment-related limitations or restrictions in the abilities listed in the following paragraphs," which sets out the physical and mental demands of work.

Significantly, under the new regulations the Treating Source Rule has been abrogated and 20 CFR Section 416.920(c) now makes that clear. It states, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from your medical sources." That section goes on to provide the factors that should be considered, including supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, the examining relationship, specialization, and other factors.

That regulation and what limited case law has evolved under the new regulations make it clear that the two key factors are supportability and consistency.  And the cases suggest that those two factors must be addressed by an Administrative Law Judge who is weighing a medical opinion but that the ALJ can, but need not, address the remaining factors.  The two cases that I found very helpful in explaining the new regulations are *Jacqueline L. versus Commissioner of Social Security*.  The cite is 2021 WL 242099.  It was issued on January 26, 2021, by District Judge Elizabeth A. Wolford from the Western District of New York.  And *Andrew G. versus Commissioner of Social Security*, at 2020 WL 5848776, from October 1, 2020, issued by one of my colleagues and the person that took my position, Magistrate Judge Miroslav Lovric.

    Mentally, the focus of -- one of the focuses of plaintiff's argument is on Dr. Shapiro's opinion and the finding of the moderate limitation that I quoted a moment ago.  Dr. Shapiro's opinion is discussed at page 20 of the Administrative Law Judge's decision.  The finding is that Dr. Shapiro's opinion is persuasive and consistent with the record, it is supported by the examination findings, and is consistent with the claimant's activities of daily living.

    I note that the Administrative Law Judge did, in going through the so-called "B" criteria under the listings, find a

moderate limitation in concentration, persistence and pace. That limitation is included and accommodated in the residual functional capacity finding.

I note also that there are several cases that suggest that moderate limitations do not preclude the ability to perform unskilled work. *Richard H. versus Saul,* 2020 WL 467734, from the Northern District of New York, January 29, 2020; citing *Zabala v. Astrue*, 595 F.3d 402, that's from the Second Circuit, February 11, 2010.

I would have liked to have seen perhaps a more fulsome discussion by the Administrative Law Judge addressing the reason for finding consistency and persuasiveness, but I believe that a full reading of the opinion satisfies me that those were discussed and the basis for finding consistency and persuasiveness is outlined.

The other opinion that is at issue comes from Dr. Hoffman, which is not at issue, but Dr. Hoffman issued an opinion addressing the mental aspect of plaintiff's condition, and stated at page 65 of the Administrative Transcript as follows: "The claimant is able to understand and remember instructions and procedures and sustain ongoing mental performance for a full workday/workweek. He is able to interact appropriately with others to meet work-related needs and adapt to changes in a work setting. These findings complete the medical portion of the disability

determination." That's from Dr. L. Hoffman, a psychologist. That was found to be persuasive at page 19 of the Administrative Transcript.

Under the new regulations, such an opinion of a state agency expert is entitled to weight under 20 CFR Section 416.913a. As the Administrative Law Judge noted, and as the Commissioner pointed out in his brief, plaintiff had many, many normal mental status exams, he had a fairly fulsome range of activities of daily living. And the determination of the ALJ on the mental aspects is also supported by the results of Dr. Shapiro's examination, which showed that his mental condition is controlled with counseling and periodic medication management; although, as Dr. Shapiro noted, at some points he was undergoing no medication for his mental health condition. And again, the backdrop here is that it is plaintiff's burden through step four to establish a limitation.

The opinion of Dr. MacGregor that was issued along with Deidre Plumley on June 21, 2019, was discussed by the Administrative Law Judge at page 20 of the Administrative Transcript. That opinion appears at 543 to 545 of the -- I'm sorry, 547 of the Administrative Transcript. It's extremely limiting, unquestionably. It literally concludes that plaintiff is unable to meet competitive standards or has no useful ability to function in all but three areas out of the

roughly 23 areas specified at page 544.

Once again, the finding of the Administrative Law Judge is that the opinions are not persuasive and inconsistent with the record and not supported by the severity found in plaintiff's treatment records. Once again, there could be a more fulsome discussion, but I believe reading the opinion as a whole, I understand the Administrative Law Judge's reasoning and it affords a basis for meaningful judicial review.

The focus on the service dog is based upon a letter dated March 15, 2019, from Belinda Hollenbeck and Deidre Plumley, a Nurse Practitioner and LMSW, respectively. And the Administrative Law Judge does discuss that letter and discuss the need for the service animal at pages 20 to 21. It's interesting; the letter first states that the plaintiff meets the definition of disability under the ADA, the Fair Housing Act, and the Rehabilitation Act of 1973. That, of course, is the finding that is on a matter reserved to the Commissioner, and under the three statutes where the definition of disability is not coextensive under the Social Security Act.

The next paragraph indicates that plaintiff has certain limitations, mental health limitations, and in order to help alleviate these difficulties and enhance his ability to work independently, those authors support a decision to maintain a

service animal.  As the Commissioner notes, the service animal is not certified, it was self-trained, and there is evidence in the record that contradicts the need to rely on that service animal in order to perform work functions.  I find that the Commissioner's determination that the service animal did not establish a limitation that had to be included in the RFC is supported by substantial evidence.

Turning to the physical component of the RFC, both Dr. Ganesh and Dr. Reynolds, a state agency consultant, found no limitations on the plaintiff's ability to perform the exertional requirements of work.  Those are discussed at pages 18 and 20 of the Administrative Transcript.  Again, it is plaintiff's burden to show a limitation and that was not carried.

It's interesting because these opinions were uncontradicted, and if the shoe was on the other foot and those uncontradicted opinions found a greater limitation on exertional requirements than the RFC, the plaintiff would be arguing that they could not be discounted unless the reasoning for doing so is overwhelmingly compelling.

I find that the plaintiff has not established his inability to perform the exertional requirements of medium work.  I understand the reliance on *Vincent versus Berryhill,* 2018 WL 4705594, from the Western District of New York, October 2, 2018.  I think that case can be distinguished

because there was some evidence of limitations in that case, where there is none here other than plaintiff's testimony. But in any event, to the extent it can't be, I respectfully disagree with the decision and I choose to follow the course taken from *Jones versus Berryhill*, 2019 WL 1529163, from the Western District of New York also, from April 9, 2019.

I think it would be a needless waste to remand this matter for evaluation of whether plaintiff was less disabled than the Administrative Law Judge found. And I note that the weight to be given to medical opinions is a matter entrusted in the first instance to the Administrative Law Judge under *Veino versus Barnhart*, 312 F.3d 578 (2002). And a reminder that the finding of the Administrative Law Judge cannot be set aside unless a reasonable fact-finder would have to conclude otherwise. *Morris versus Berryhill,* 721 F. App'x 25, from the Second Circuit, January 18, 2018.

Turning to the second argument, what we used to call credibility, the evaluation of subjective complaints of the plaintiff. For sure an ALJ must take into account a plaintiff's subjective complaints when proceeding through the five-step sequential analysis. When examining the issue, however, the ALJ is not required to blindly accept the subjective testimony of a claimant; rather, the ALJ retains the discretion to weigh the credibility of the claimant's testimony in light of the other evidence in the record.

*Genier versus Astrue*, 606 F.3d 46 (2nd Cir. 2010). "A plaintiff's subjective complaints are entitled to great weight when they are consistent with and supported by objective clinical evidence demonstrating that he has a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged."

When considering and weighing a plaintiff's subjective symptomology, the ALJ must consider several factors, including daily activities; location, duration, frequency, and intensity of any symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medications taken; and any other treatment received; and any other measures taken to relieve the symptoms. The weighing of subjective symptomology is also addressed in Social Security Ruling 16-3p, which is consistent with what I just said.

In this case the ALJ did weigh subjective symptomology and reject plaintiff's claims of disabling conditions. Obviously, the reasons must be set forth and must be supported by substantial evidence. But it's not the Court's function to reweigh the evidence and determine whether the Court would have found otherwise.

The reasons cited by the ALJ are outlined at pages 18 through 21. The reasons include the finding that plaintiff's conditions seem to be well-controlled; conservative

treatment; he does not undertake any medication; there are many mental normal treatment status notes. Dr. Shapiro's observations are included, plaintiff's activities of daily living and the medical opinions, including Dr. Shapiro and Dr. Hoffman.

So I find that the credibility analysis or the subjective symptomology was properly weighed and the weight given was explained satisfactorily and is supported by substantial evidence.

So, in conclusion, I find that correct legal principles were applied and the resulting determination is supported by substantial evidence. I will, therefore, grant judgment on the pleadings to the defendant and order dismissal of plaintiff's complaint.

Thank you once again. I hope you both stay safe in this challenging environment.

                *              *            *

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter